UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHAD EXCEEN**,

    Plaintiff,

v.                                        Case No. 8:24-cv-00880-WFJ-AEP

**DAVID RAMIREZ, M.D.**, and
**PLUSHCARE, INC.**,

    Defendants.
_____/

## ORDER

Before the Court is Defendants David Ramirez, M.D.'s and Plushcare, Inc.'s ("Defendants") Motion to Compel Arbitration (Dkt. 10), Plaintiff Chad Exceen's Response in Opposition (Dkt. 18) and Defendants' Reply (Dkt. 20). After careful consideration, the Court grants Defendants Motion and stays the case pending arbitration.

### BACKGROUND

In September 2021 Mr. Exceen visited the doctor. Dkt. 1-1 at 3. The visit did not take place in a physical office or examining room—instead, Plaintiff and Dr. Ramirez met virtually via Plushcare, a telehealth service provider. *Id.* For reasons irrelevant to the instant Motion, Mr. Exceen alleges that Dr. Ramirez was negligent

during this visit. *Id.* at 3–4. In December 2024, he filed the instant medical malpractice claim in state court. *Id.* at 3–5.

Defendants removed the matter to federal court and filed their Motion to Compel Arbitration in April 2024. Dkt. 1 at 1; Dkt. 10 at 1. The Motion is based on a Terms of Use Agreement ("TOU") that contains an arbitration clause. Dkt. 10 at 6–7. The relevant language states:

> It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this Agreement were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for the judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.

Dkt. 20-1 at 12. The arbitration provision is located in the middle of the TOU, in Section 22. *Id.*

An archived version of Plushcare's webpage with the TOU is attached to the Motion to Compel. Dkt. 10-4. at 3. Attached to Defendants' Reply is another copy of the TOU, a digital audit history verifying that the attached TOU was in effect at the time of Mr. Exceen's visit, and a Declaration by Falko Butler, Vice President of Software Engineering at Plushcare. Dkt. 20-1. In his Declaration, Mr. Butler explained that "[w]hen Mr. Exceen registered on Plushcare's website, the registration process required him to affirmatively check that he agreed to Plushcare's

Terms of Use." Dkt. 20-1 at 2. Plushcare's website did not allow Mr. Exceen to continue with the registration process until he agreed to the TOU. *Id.* at 3.

Mr. Exceen filed a Response in Opposition (Dkt. 18), and Defendants submitted the above-mentioned Reply (Dkt. 20). For the reasons explained below, the Court grants the Motion.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") "establishes a liberal federal policy favoring arbitration agreements." *Moses H. Cones Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1947).

A court may hear certain "gateway matters," including challenges to an arbitration clause's validity, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006), or whether both parties actually signed the contract, *id.* at 445 n.1. "[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists," but even when applying state law, "the federal policy favoring arbitration" must be "taken into consideration." *Id.* at 444–445; *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).

The Court considers the following factors when deciding whether to compel arbitration: "1) whether a valid written agreement to arbitrate exists; 2) whether an

3

arbitrable issue exists; and 3) whether the right to arbitrate has been waived." *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *4 (M.D. Fla. Mar. 10, 2008) (citations omitted). If a court compels arbitration, it should stay the arbitrable claims. *Smith v. Spizzirri*, 144 S. Ct. 1173, 1175 (2024); *Klay v. All Defs.*, 389 F.3d 1191, 1203–04 (11th Cir. 2004).

## ANALYSIS

Mr. Exceen urges the Court to deny Defendants' Motion to Compel for two reasons: (1) Defendants did not prove that he signed the TOU, Dkt. 18 at 2–4; and (2) the arbitration provision does not comply with California law, *id.* at 4–5. Both these arguments attack the existence of a valid written agreement to arbitrate. For the reasons explained below, the Court finds neither persuasive.

### I. Whether Mr. Exceen Assented to the TOU

Mr. Exceen argues that he should not be compelled to arbitrate his claims because Defendants failed to prove he signed the TOU. Dkt. 18 at 3. "The threshold question of whether an arbitration agreement exists at all is simply a matter of contract." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016). Generally, state law governs "whether an enforceable contract or agreement to arbitrate exists." *Id.* Under both Florida and California law,[1] the party seeking to

---

[1] While the TOU contains a California choice of law provision, Dkt. 20-1 at 13, Mr. Exceen argues that Florida law should apply to the threshold issue of contract validity, Dkt. 18 at 2. Ultimately, the outcome is the same under either state's law.

4

compel arbitration has the burden of proving the existence of an arbitration agreement by a preponderance of the evidence. *Higgins v. Superior Ct.*, 140 Call. App. 4th 1238, 1249 (Cal. Ct. App. 2006); *Mitchell v. Precision Motor Cars Inc.*, 8:17-cv-376-T-24AAS, 2017 WL 1361528, at *2 (M.D. Fla. Apr. 14, 2017).

District courts may conclude that an arbitration agreement exists as a matter of law as long as "'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Bazemore*, 827 F.3d at 1329 (quoting Fed. R. Civ. P. 56(a)) (explaining that the standard is akin to that of summary judgment). "A dispute is not genuine if it is unsupported by the evidence or is created by evidence that is merely colorable or not significantly probative." *Id.* (quotations omitted). Furthermore, "conclusory allegations without specific supporting facts have no probative value for a party resisting" a motion to compel arbitration. *Id.*

In *Mitchell v. Precision Motor Cars*, the defendant sought to compel arbitration of a credit-related dispute. 2017 WL 1361528 at *1. However, the plaintiff claimed that the credit card application she signed did not contain an arbitration agreement. *Id.* As evidence that an arbitration agreement existed, the defendant presented: (1) an unsigned credit card application that incorporated the arbitration clause; (2) an affidavit of one of its employees, attesting that the plaintiff signed an application when she applied for a credit card; and (3) testimony, in the same affidavit, that the unsigned application submitted to the court was "the only

credit application utilized by [the defendant] at this time." *Id.* at *3. The *Mitchell* court found this evidence competently supported the existence of an arbitration agreement. *Id.* While the *Mitchell* court ultimately submitted the issue of the agreement's existence to trial, it did so because the plaintiff "unequivocally denie[d] that she completed the credit application claimed by [the defendant]" and "provide[d] a detailed description of the credit application she allegedly signed." *Id.*

Conversely, in *Bazemore v. Jefferson Capital*, the Eleventh Circuit held that the defendant failed to submit competent evidence showing the plaintiff agreed to arbitrate future claims concerning an online credit card application. *Bazemore*, 827 F.3d at 1327. The *Bazemore* defendant failed to present evidence that the plaintiff would have been unable to apply for the card without first accepting the terms and conditions that encompassed the arbitration agreement. *Id.* at 1327–28. Moreover, the defendant did not produce the alleged agreement. *Id.* at 1331–1332. The Eleventh Circuit found these omissions "quite important." *Id.* at 1327.

Here, Defendants have produced exactly the evidence that was sufficient in *Mitchell* and lacking in *Bazemore*: (1) a copy of the TOU itself, Dkts. 10-4, 20-1 at 5–14; (2) documentary and testimonial evidence that the TOU was in use at the time Mr. Exceen created his Plushcare account, Dkt. 20-1 at 1–3, 16; and (3) documentary and testimonial evidence that Mr. Exceen could not have created his online account or attended his virtual appointment without first having assented to the TOU, *id.* at

6

1–3, 18. Furthermore, Mr. Exceen did not provide the type of probative evidence that convinced the *Mitchell* court to send this question to trial. Instead, he merely stated that he "has no recollection of ever seeing the attached Terms of Use or assenting to their terms." Dkt. 18 at 3. This conclusory allegation is not supported by evidence and has no probative value. *See Bazemore*, 827 F.3d at 1327. Defendants put forth competent, unrebutted evidence showing that an agreement to arbitrate exists and was signed by Mr. Exceen.

II.     **Whether California Law Invalidates the Arbitration Provision**

Mr. Exceen next argues that the arbitration provision is invalid because it does not comply with California law. Dkt. 18 at 4–5. Pursuant to California's Code of Civil Procedure, an arbitration provision in a contract for medical services must be the first article of the contract. Cal. Civ. P. § 1295(a). Additionally, the contract must include a notice directly above the signature line, in bold red type that is at least 10-point font, informing the signatory that he is agreeing to arbitrate medical malpractice claims and is waiving his right to a jury trial on those claims. § 1295(b). The Civil Code provides specific language that must be used in both the arbitration provision and the notice. § 1295. The TOU at issue here did not comply with these requirements. Dkt. 18 at 4–5.

A state law that "governs not 'any contract,' but specifically and solely contracts 'subject to arbitration,' conflicts with the FAA." *Doctor's Assocs., Inc. v.*

7

*Casarotto*, 517 U.S. 681, 683 (1996). While states may regulate arbitration provisions under general principles that apply to any contract, they may not "invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Id.* at 687. In *Doctor's Associates*, the Supreme Court found that § 2 of the FAA preempted a Montana law requiring that "notice that [a] contract is subject to arbitration" be "typed in underlined capital letters on the first page of the contract." *Id.* The California law at issue here is similar in that it requires special notice in distinct font just above the signature line, as well as placement of the arbitration provision in the first clause of the contract. Cal. Civ. P. § 1295. Because the law "singl[es] out arbitration provisions for suspect status," it is preempted by the FAA. *Doctor's Assocs.*, 517 U.S. at 687.

Opinions of California's intermediate appellate courts support this conclusion. In *Erickson v. Aetna Health Plans*, California's Second District Court of Appeal discussed California Health and Safety Code § 1363.1. That law adopts the language of California Code of Civil Procedure § 1295 and requires a trial waiver notice to be placed "immediately before the signature line" of the contract. *Erickson v. Aetna Health Plans*, 71 Cal. App. 4th 646, 652 (Cal. Ct. App. 1999). Relying on *Doctor's Associates*, the *Erickson* court held that § 1363.1 is preempted by the FAA. *Id.* at 652.

Subsequent California appellate court opinions have distinguished § 1363.1 because it addresses health insurance contracts.[2] *Smith v. PacifiCare Behavioral Health*, 93 Cal. App. 4th 139, 151 (Cal. Ct. App. 2001); *Imbler v. PacifiCare*, 103 Cal. App. 4th 567, 577 (Cal. Ct. App. 2002). By treating § 1361.1 as an exception to the general rule that states cannot pass laws applicable only to arbitration provisions, these courts have implicitly recognized that such state laws—other than § 1363.1—run afoul of the FAA. *Smith*, 93 Cal. App. 4th at 148–49. Recognizing *Doctor's Associates*, both *Smith* and *Imbler* acknowledged that the FAA "would have the effect of invalidating, impairing and superseding the operation of section 1363.1," were it not for Congress's special treatment of state laws regulating business insurance in the McCarran-Ferguson Act. *Smith*, 93 Cal. App. 4th at 151; *Imbler*, 103 Cal. App. 4th at 573. Thus, the Court finds support for its conclusion in U.S. Supreme Court precedent and in the reasoning of California's appellate courts. Because the FAA preempts § 1295, the arbitration clause at issue here is valid.

---

[2] *Smith* and *Imbler* concluded that the McCarran-Ferguson Act, 15 U.S.C. § 1012, gives states the power to regulate arbitration clauses in health insurance contracts. *Smith*, 93 Cal. App. 4th at 151; 103 Cal. App. 4th at 577. That Act instructs that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012.

9

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendants' Motion to Compel Arbitration is **GRANTED**. The Court stays this case pending the outcome of arbitration.

**DONE** and **ORDERED** at Tampa, Florida, on June 13, 2024.

>  */s/ William F. Jung*
> **WILLIAM F. JUNG**
> **UNITED STATES DISTRICT JUDGE**

**Copies Provided To**
Counsel of Record